1

1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF WASHINGTON
2

UNITED STATES OF AMERICA,        )  Case No. 2:16-CR-072-RMP
3                                )
                     Plaintiff,  )  January 4, 2017
4                                )  Spokane, Washington
vs.                              )
5                                )  Sentencing Hearing
JASON JAY LINGO,                 )
6                                )  Pages 1 - 25
                     Defendant.  )
7    _____

              BEFORE THE HONORABLE ROSANNA MALOUF PETERSON
8                  UNITED STATES DISTRICT COURT JUDGE

9    APPEARANCES:

10   For the Plaintiff:          Mr. James A. Goeke
                                 U. S. Attorney's Office
11                               920 West Riverside, Suite 300
                                 P.O. Box 1494
12                               Spokane, Washington 99210-1494

13   For the Defendant:          Mr. Colin G. Prince
                                 Federal Defenders of Eastern
14                               Washington and Idaho
                                 10 North Post
15                               Suite 700
                                 Spokane, Washington 99201

16

17

18

19

20   Official Court Reporter:    Ronelle F. Corbey, RPR, CRR, CCR
                                 United States District Courthouse
21                               P.O. Box 700
                                 Spokane, Washington 99210
22                               (509) 458-5283

23

24
     Proceedings reported by mechanical stenography; transcript
25   produced by computer-aided transcription.

2

*SENTENCING HEARING - JANUARY 4, 2017*

1    (Court convened on January 4, 2017, at 10:12 a.m.)

2         THE COURTROOM DEPUTY:  All rise.

3    (Call to Order of the Court)

4         THE COURT:  Please be seated.

5         THE COURTROOM DEPUTY:  We have *United States of*

6  *America v. Jason Jay Lingo*, Case No. CR-16-072-RMP, time set for

7  sentencing hearing.

8       Counsel, would you please make your appearances for the

9  record?

10        MR. GOEKE:  Good morning, your Honor.  James Goeke on

11 behalf of the United States, and I'm appearing on behalf of

12 Stephanie Lister from my office.

13        THE COURT:  Good morning.

14        MR. PRINCE:  Good morning, your Honor.  Colin Prince

15 on behalf of Mr. Lingo.

16        THE COURT:  Good morning.  Good morning, Mr. Lingo.

17        THE DEFENDANT:  Good morning.

18        THE COURT:  As a preliminary matter, I want to make

19 sure that you've had the opportunity to review all of the same

20 documents that I have reviewed; and those include the

21 Presentence Investigation Report, which is ECF No. 49, and that

22 was filed December 21st; and the addendum to the Presentence

23 Investigation Report, ECF 48, also filed December 21st.

24      Did you have an opportunity to review those?

25        MR. PRINCE:  Yes, your Honor.

*SENTENCING HEARING - JANUARY 4, 2017*

1     THE COURT:  Okay.  In addition, there's the

2  Government's review of the PSR, which is ECF No. 46, filed

3  December 5th.

4     Did you review that?

5          MR. PRINCE:  Yes, your Honor.

6          THE COURT:  There is the defendant's sentencing

7  memorandum, ECF No. 55, which was filed December 30th; and that

8  included letters by your sister, by friends -- long-time

9  friends, by your significant others, and other people.

10    Did you review that?

11         MR. PRINCE:  Yes.  Yes, your Honor.

12         THE DEFENDANT:  (Nods assent)

13         THE COURT:  And, finally, filed today -- and I don't

14  know if you saw it, Mr. Goeke -- ECF No. 56, a letter from

15  Dr. Shepard about counseling sessions.

16         MR. GOEKE:  I did, your Honor.  Thank you.

17         THE COURT:  Okay.  And did you review that, Mr. Lingo?

18         THE DEFENDANT:  Yes, your Honor.

19         THE COURT:  Okay.  You have no criminal history

20  points, whatsoever, which places you in Criminal History

21  Category I.  You have a total offense level of 34.  Under the

22  statute, there is a requirement of a minimum of 5 years of

23  incarceration up to 20 years of incarceration; supervised

24  release of from 5 years minimum to life; a fine of up to

25  $250,000; a $100 special penalty assessment.

4

*SENTENCING HEARING - JANUARY 4, 2017*

1    Under the guideline provisions, the sentencing range would

2  be 151 months to 188 months; supervised release of from 5 years

3  to life; a fine of from 17,500 to $175,000; and a $100 special

4  penalty assessment.

5    Mr. Prince, I want you at the podium first by yourself.

6  The count that Mr. Lingo plead to was receipt.

7         MR. PRINCE:  Correct, your Honor.

8         THE COURT:  And, in reviewing the Presentence

9  Investigation Report, it was not referenced to "knowingly" in

10  any way.  In fact, I questioned whether he understood the

11  distribution aspect and whether the five-year mandatory minimum

12  is actually triggered.  I'm well aware this is an 11(c)(1)(C),

13  but have you discussed at length with the Government as to

14  whether the receipt actually falls into the statutory mandatory

15  minimum?

16         MR. PRINCE:  My understanding was that receipt does

17  fall under the statutory mandatory minimum.

18         THE COURT:  It requires a knowing distribution aspect

19  or a knowing.  And, as the Presentence Investigation Report is

20  written, it is -- he has self-described himself as a two on a

21  scale of ten regarding computer literacy.  And, since there was

22  not any sort of intentional -- and I'm not clear that there was

23  an awareness of an actual file sharing component.

24         MR. PRINCE:  Your Honor, there -- my understanding is

25  the receipt does trigger.  And he did understand that he had

*SENTENCING HEARING - JANUARY 4, 2017*

1  received child pornography, and that does trigger the mandatory

2  minimum.

3       Have I misread this, your Honor?

4           THE COURT:  Well, I don't know.  I mean, certainly the

5  statute on its face says that; but it also refers to

6  "knowingly."

7           MR. PRINCE:  Yes.  And he did understand that he had

8  received and knew that he was receiving it.  He had, indeed,

9  searched for specific terms and understood that he had received

10 it.

11          THE COURT:  All right.  Mr. Goeke, your comments on

12 that?

13          MR. GOEKE:  I would agree with that, your Honor.  I

14 would ask the Court to consider the PSR.  There is a lengthy

15 recitation of statements that the defendant made beginning at

16 Paragraph 15, Page 5 through Page 7.  In particular, at the

17 bottom of Page 6, the defendant admitted to using search terms

18 to locate child pornography.  He was unable to recall any of the

19 search terms he used.  A number of terms were found forensically

20 on the computer that were indicative of searching for, seeking

21 out child pornography.

22      On Page 7 toward the bottom of the factual recitation, the

23 defendant stated he knows it's wrong to download and view child

24 pornography; explained he occasionally deleted it -- so he knew

25 he received it because he deleted it -- and has tried to stop

*SENTENCING HEARING - JANUARY 4, 2017*

1  doing it but his tendency is to fall back into it.

2      At the very bottom of that recitation, when asked why he

3  did not do this at his house and not -- why he did this at his

4  house and not his parents' house or a coffee shop, he indicated

5  privacy.

6      He also indicated that he knew, generally speaking, what

7  peer-to-peer software programs were.  The defendant confirmed

8  that he had the peer-to-peer file software sharing program,

9  Ares; that it was installed shortly after getting his computer

10  approximately six months ago.  It's the midsection on Page 6.

11      He also admitted to using another peer-to-peer file sharing

12  program previously called LimeWire.

13      And there were a tremendous number of child pornography

14  images on the computer as related in Paragraph 19 at the bottom

15  of Page 7 of the PSR.  There were -- by counting the videos

16  consistent with the guidelines, there were 732 images of child

17  pornography.  The resulting calculation was 8,382 images.

18  Potentially, 24,732 images of child pornography were recovered

19  from the Dell computer in the defendant's home.

20      In addition at Paragraph 18, there are, through forensic

21  examination of the computer, a number of child pornography

22  search terms that were identified that the defendant used to

23  seek out and bring that child pornography down to his computer.

24          THE COURT:  So your position on 2252A of the statute

25  is that that is sufficient to trigger the statutory minimum.

7

*SENTENCING HEARING - JANUARY 4, 2017*

1      MR. GOEKE:  We believe -- yes, your Honor, it is

2  sufficient.  It's consistent with virtually every other single

3  peer-to-peer case I've seen in this District.  The defendant

4  goes out onto the Internet, uses a file-sharing software, seeks

5  out child pornography, receives it, knows they received it

6  because they view it, and they know they were receiving it

7  through the peer-to-peer program.

8      THE COURT:  But that's not necessarily true in every

9  other District.  Correct?

10      MR. GOEKE:  I think it's true in every other District.

11  I think the issue -- some Districts -- the practice of how to

12  resolve these cases may be different.  In some Districts, I know

13  the practice is to resolve them within the statutory guidelines.

14  Some Districts resolve these through a possession charge.

15      In this District, the practice for peer to peer is to

16  resolve them through a receipt or a distribution charge.

17      And I can advise the Court I know that -- and I've had this

18  discussion with a number of judges in the District, and I know

19  some judges disagree with the office's position on this.  But I

20  can tell you that there is some thought to it.  There's a lot of

21  thought to it.  And the basis is, with the peer-to-peer

22  defendants, these are people who are receiving child

23  pornography.  They're putting it back out into the Internet

24  through their peer-to-peer software.  So they're also

25  distributing it.

8

*SENTENCING HEARING - JANUARY 4, 2017*

1    That's how the peer-to-peer software works.  Everything is

2  in a shared folder.  It's available for others to then pull off

3  themselves into the Internet.  So they are spreading the weed,

4  so-to-speak, of child pornography on the Internet.  Different

5  than other cases, which are resolved through a possession charge

6  where someone is maybe receiving it but not distributing it

7  through that software.

8         THE COURT:  So that takes a level of expertise of

9  understanding peer-to-peer software.

10         MR. GOEKE:  It takes a level of expertise to

11  understand it, but it's also is a -- is conduct that is

12  continuing to spread the child pornography over the Internet.

13  And that's the Government's concern with those types of -- the

14  peer-to-peer cases.

15         THE COURT:  All right.  Mr. Prince, do you have

16  anything else to say on this topic?

17         MR. PRINCE:  Only, your Honor, that the

18  Government's -- the U.S.A.'s policy on how to resolve this type

19  of case, which obviously is very common, a peer-to-peer case.  I

20  can't comment on their policies about, you know, whether I agree

21  or disagree.

22    As for receipt to what Mr. Lingo has plead to,

23  unfortunately, we do believe that the facts are sufficient to

24  support his plea.  I think what your Honor has touched on is

25  exactly what we got to, which was that we would have fought

*SENTENCING HEARING - JANUARY 4, 2017*

1   strenuously on distribution.  We felt that the facts were more

2   difficult on receipt and certainly on possession, and there

3   were -- there was an added amount of difficulty with the

4   forfeiture.  We do believe that the facts support this charge.

5   Whether this is the right policy decision and the right

6   resolution is something that, unfortunately, Congress has taken

7   a position on.

8           THE COURT:  All right.  Mr. Goeke, you wanted to be

9   heard?

10          MR. GOEKE:  And I would just add, your Honor, as I

11  know -- I know the Court is well aware of this; but I would add

12  that the way these cases are being resolved, the peer-to-peer

13  cases in this District, while I know this Court and other Courts

14  are uncomfortable with the mandatory minimums, our office is

15  bound by what Congress has directed us to do.  And I will -- but

16  I do note that it is a substantial 3553 departure from the

17  guideline range.

18          THE COURT:  I don't think the guidelines are really

19  drafted for this type of situation.  And certainly there can be

20  an argument made -- and I will be making it right now -- that

21  other statutes, including 3553, which are factors that I have to

22  consider, completely gut any sort of rationale for imposing a

23  five-year mandatory minimum in this case.

24      I agree, my hands are also cuffed; and I'm not happy about

25  it in the least.  I think it is unjust.  And, if there was a way

*SENTENCING HEARING - JANUARY 4, 2017*

1  for me to sentence below the five years -- throw away the

2  guidelines.  I'm not even going anywhere near the guidelines.

3  But the five-year mandatory minimum in this case that Congress

4  has insisted upon is more than should be imposed in this case.

5      MR. GOEKE:  And I can just tell the Court, I

6  appreciate the Court's comments; and I will certainly carry

7  those back to my office as myself and others who are involved in

8  these cases continue to readdress and decide what the best

9  policy restrictions are consistent with the guidelines we have

10  to follow as an office that come from on high.

11      THE COURT:  Well -- and I appreciate that, and I

12  appreciate that there is national policy; but I'm also aware,

13  from talking to judges in other Circuits, that different U.S.

14  Attorney's offices handle it differently and do not charge

15  receipt.

16      Certainly there are cases where distribution -- and

17  justifiably -- deserve big sentences if people are going out of

18  their way to create a market for child pornography that results

19  in the victimization of children.

20      I do not see that in this case.  I am frustrated and

21  disappointed that there has not been more thought given into

22  being able to individualize.  And I appreciate that the

23  Government doesn't always know the facts of the case as a plea

24  agreement is entered into, and that's unfortunate.

25      MR. GOEKE:  And I appreciate the Court's comments in

*SENTENCING HEARING - JANUARY 4, 2017*

1  that regard.

2       THE COURT:  All right.  Thank you, Mr. Goeke.  Please

3  do share my views.

4       Mr. Prince, first, you at the podium to talk about a

5  sentence.

6       MR. PRINCE:  Your Honor, yes, I would like to address

7  that.  The only last point I would add is, given the Court's

8  comments, that I would add for the record that I did argue for a

9  possession charge.  Obviously, this was not Mr. Goeke's case.  I

10 just feel it's important to let the Court know that.

11      Mr. Lingo, under the circumstances, is asking the Court to

12 accept the recommendation of the parties.  Nothing more than

13 60 months is certainly necessary.  And I find this to be a

14 sentencing where, as an attorney, I want to say a million things

15 about Mr. Lingo; but, especially given the Court's comments and

16 my feeling of the evidence and the record, is that all I would

17 be doing is trampling the Court's time.

18      THE COURT:  I think it's important for Mr. Lingo to

19 hear you say those things.  I think it's important for his

20 family to hear you say those things.

21      MR. PRINCE:  So do I, your Honor; and -- and there was

22 two points that I want to highlight.  The first is, I do not

23 think we would be here today if we were a country with a

24 properly functioning health care system.  When Mr. Lingo was 16,

25 he found his mother's body; and I cannot impress upon the Court

*SENTENCING HEARING - JANUARY 4, 2017*

1  the impact in my discussions with him that that had on his

2  emotional status.  He was already having difficulties elsewhere

3  in life.  And, perhaps, if his family, who is all here today,

4  had been one of more substantial means or if we were a country

5  that had a proper health care system, this young man would have

6  seen a counselor when he was 16.  He would have been diagnosed

7  as depressive and with anxiety that runs in his family, and he

8  would have been diagnosed at 16 rather than 27 after Probation

9  got him a counselor.  So that's the first point.

10         The second point is this is an offense that is undoubtedly

11  tied to his emotional state.  Mr. Lingo has some comments to

12  make to the Court, and I think that they are best made by him.

13  But, essentially, this is a cycle where somebody becomes

14  depressive; they engage in darker thoughts; they find ways to

15  avoid that in their computers; and, unfortunately, this is where

16  that leads.

17         Legally, under the 3553 factors, I don't need to go into

18  those a great deal with the Court's comments.  There is no

19  particular need to give Mr. Lingo a harsh penalty -- hasher than

20  Congress has prescribed I should say -- to deter him, to

21  incapacitate him.  I will leave to Congress's wisdom the

22  retributive nature of 60 months for this offense, and there's

23  certainly no need for incarceration as a means to rehabilitation

24  under 3553.

25         Had notes on the sentencing guidelines but I think the

*SENTENCING HEARING - JANUARY 4, 2017*

1    Court summed those up more aptly than I can.

2         The other thing that I'd like the Court to know is, while

3    we would not have conceded forfeiture of the house, your Honor,

4    we do acknowledge that there was a risk of that.  And it's that

5    group of people behind me that pooled their resources, pooled

6    their savings in order to make sure that that house was not lost

7    because, as this Court knows and as we all know, there is no

8    single group of offenders that is more at a risk of homelessness

9    and unemployment than sex offenders.  And the fact that

10   Mr. Lingo has a house will, I hope, make his transition back to

11   society one with a little more grace and ease than is frequently

12   the case for our clients.

13        So, with that, your Honor, we would ask the Court to impose

14   the bare minimum and nothing more.  The agreement is for

15   60 months followed by 20 years supervised release.  I would also

16   ask the Court to allow Mr. Lingo to self-report.  I've spoken

17   with Mr. Goeke before the hearing, and he does not oppose

18   self-report.

19        With that, your Honor, I would like to ask my client to

20   make some comments.

21              THE COURT:  In a minute.

22              MR. PRINCE:  I'm sorry.

23              THE COURT:  I'm going to have Mr. Goeke speak first

24   and, then, you will get final words, Mr. Prince, and then

25   Mr. Lingo, anything he wants to say.  Mr. Goeke.

14

*SENTENCING HEARING - JANUARY 4, 2017*

1      MR. GOEKE:  Frankly, I don't know that I disagree with

2  much of what Mr. Prince said in terms of -- of, if there was a

3  way to get to offenders in this area of the law sooner before

4  they are caught up in a criminal investigation, I think we would

5  all be better off.  The defender would be better off.  Society

6  would be better off.  The taxpayer would be better off.  I don't

7  have the tools to fix that system, unfortunately.

8      THE COURT:  Your office does though.  If your office

9  participated in a pretrial diversion program, it would be

10  possible.

11      MR. GOEKE:  And I very much appreciate the Court's

12  comments on those -- on those issues, and I can tell the Court

13  to the extent I have an input on that.  I don't know that my --

14  my personal views and the Court's personal views are

15  significantly different.

16      THE COURT:  I'm aware of that, Mr. Goeke; and I

17  appreciate it.

18      MR. GOEKE:  And I -- and I do appreciate the Court's

19  comments in terms of how to resolve these cases; and I -- I do

20  carry those back to my office and will in this instance, as

21  well.

22      That said, I've reviewed the case file.  This case was

23  negotiated for a (c)(1)(C) to 60 months.  There was a

24  negotiation, also, for an $8,000 payment in lieu of forfeiture

25  of the residence.  All those -- that condition has been

15

*SENTENCING HEARING - JANUARY 4, 2017*

1 satisfied, and the Government does recommend that the Court

2 accept the agreement as it is in place and impose a 60-month

3 sentence and the other conditions that are -- are required by

4 the plea agreement.

5          THE COURT:  Thank you.

6          MR. GOEKE:  Thank you, your Honor.

7          THE COURT:  Mr. Prince, Mr. Lingo, please come to the

8 podium.  Mr. Prince, anything you would like to add?

9          MR. PRINCE:  Nothing, your Honor.

10          THE COURT:  Mr. Lingo, what would you like to say?

11          THE DEFENDANT:  I'd like to thank the Court for moving

12 my sentencing date out.  It allowed me to spend time with my

13 family on Christmas.  Thank you, very much.

14     I -- I've jotted down some notes so I'm not blank up here.

15 I'm not the most intelligent person.  I -- I do or say things

16 without thinking about how others may feel or the consequences

17 that can come from my actions.  I make mistakes, and I try it

18 move forward and become a better person.

19     I've had about a year and eight months since this has all

20 happened to -- you know, to think about my actions; and I

21 understand, like, how, you know, victims of this sort of thing

22 might feel.  You know, it could really traumatize somebody; and

23 I wouldn't want anybody I -- I know to, you know, have to go

24 through that.

25     I'd like to apologize to the Court for, you know, wasting

*SENTENCING HEARING - JANUARY 4, 2017*

1   the time and expenses and, you know, resources and whatnot.

2       I'd like to apologize to my -- my family and friends for

3   having to deal with all this.  I'm -- I'm -- it's been really

4   rough.

5           THE COURT:  And just take your time.

6       (Pause in the proceedings)

7           THE DEFENDANT:  I've been -- I've been doing my best

8   to, you know, do my job and be independent and live on my own;

9   and I've failed to do that.

10      I've had a lot of -- I've had a lot of trouble in my life

11  financially.  You know, I've gone through a lot of hardships

12  with my mom and bad relationships, poor choices.  I was about

13  16 years old.  That's when I lost my mom.  And it's just -- you

14  know, I think about it every day.

15      Like, my junior year of high school.  I've always been,

16  like, real shy and self-conscious.  And I -- you know, I finally

17  got that nerve to, you know, talk to a girl; and I spent about

18  two years of my life with her and put me through a lot of -- a

19  lot of pain.  I -- I carried that burden for -- forever.  That

20  relationship ended horribly.  And, you know, it was somebody I

21  trusted; I can feel safe talking to, I guess, about my issues;

22  and, you know, it just ended up badly.

23      And I -- I got in a dark place, and it -- had a problem.  I

24  note -- I started to notice I have a problem -- had a problem,

25  you know, viewing graphic material on -- on the Internet and it

*SENTENCING HEARING - JANUARY 4, 2017*

1    just kind of got worse and I just started looking at everything.

2    I just started recklessly downloading stuff and that lead to why

3    we're here -- you know, where we are today.

4        I was -- you know, I had no idea the potential consequences

5    of this.  That only -- you know, if I only knew, I -- we

6    wouldn't be here today.  I wouldn't have done that and --

7        And, when the agents showed up at my house -- or they came

8    and picked me up from work, and I was honest with them.  I told

9    them everything.  I told them, you know, that's the kind of

10   person I am.  I'm not -- I'm not gonna hide.  You know, I'm not

11   going to lie about it, certainly.  I made a mistake; and I, you

12   know, take total responsibility for that.

13       Through all this, I -- I hope I can -- I can take away

14   something positive from this experience; and it will help me to

15   be a better person and, you know, seek out some mental health

16   and maybe, you know, better myself employment -- you know,

17   employment wise and be able to go back to school and learn --

18   learn how to do something; find something I'm happy doing, you

19   know, because that's, like, a major part of my -- my depression

20   I was in.  I -- I'm stuck in a dead-end job, and I don't feel

21   respected when I'm -- you know, I come in there and show up

22   every day and work -- work really hard; and it just, you know,

23   eats at you.

24       I was working night shift, which is not a healthy way of

25   living for me, I don't think, because I don't sleep very well

18

*SENTENCING HEARING - JANUARY 4, 2017*

1  during the day and -- and she was being, like -- or, you know,

2  it makes me use poor decisions -- make poor decisions, I guess,

3  from being exhausted all the time.  I -- I'd like to find a

4  career where I can, you know, take some time off and not have to

5  worry so much about how I'm gonna pay bills or I can actually go

6  out and have some fun instead of just work all the time.

7      But I finally found somebody who -- who makes me happy, and

8  she's here today.  And we -- we're having a child together, and

9  I want a chance to be a good father and be able to provide for

10 my family.

11     And I want to, you know, once again, apologize to everybody

12 for how my issues have affected their lives.  And I would like

13 to thank everyone who has been there for my support and helped

14 me out in my time of need.

15     But I'd like to once more, you know, apologize to the Court

16 for, you know, all this; and I -- I'm doing the best I can.  And

17 I'd like -- I'd like to thank the Court for letting me give my

18 two cents, I guess.  Thank you.

19          THE COURT:  Thank you, Mr. Lingo.  You said you feel

20 like you've failed at living independently or making a good

21 life.  I disagree.  I'm impressed by reading your Presentence

22 Investigation Report.  You own your own home.  You've maintained

23 a job for, I believe, at least five years.  You graduated from

24 high school.  You took two years of college and graduated from

25 that.  You've spent, clearly, a lot of time thinking through

*SENTENCING HEARING - JANUARY 4, 2017*

1  your life, what you need, where you are, where you need to go.

2      As part of my requirement for the sentencing, I have to

3  calculate the factors under 3553, including the nature and

4  circumstances of the offense and the history and characteristics

5  of the defendant.

6      Congress has chosen to make child pornography a -- just an

7  absolute bar, and I understand that child pornography creates a

8  market for children to be victimized.  However, I understood

9  your preferences to be more in the neighborhood of 13 to

10  14-year-olds and that I understand how you got into that dark

11  spot and how just viewing that was against the law but is not

12  the worst action of child pornography that I've seen or that

13  anybody in this court has seen.

14      And I'm very dismayed that you've been caught in that net.

15  The net that Congress has created is a justified net for people

16  who are truly trying to create child pornography, who are truly

17  victimizing people.  I do not see you in that category.

18      And, in fact, reading the letters of your family and

19  friends, it's clear that you have been responsible, caring, and

20  supportive.  You should be proud of that.

21      I am bound by Congress and the law.  I would be violating

22  the law.  And I do not think that this sentence is appropriate.

23  But, if I gave you anything less and the Government appealed

24  that, you would still get the five-year sentence or worse.

25      So I will impose 60 months, 10 years of supervised release,

*SENTENCING HEARING - JANUARY 4, 2017*

1  no fine, no restitution.  You must pay the $100 special penalty

2  assessment.  And, because of the nature of the offense, you have

3  additional restrictions, including that you must register as a

4  sex offender in the states and locations where you reside or are

5  employed or go to school.

6       I'm going to remove some of these restrictions, and I don't

7  know that the law requires all of these.  I know that you live

8  in a small community.  So I don't know how feasible it is to

9  have to be barred from a thousand feet of places where children

10 congregate, et cetera.

11      So I don't know if any of these are mandatory, Mr. Goeke?

12          MR. GOEKE:  Some may be, your Honor; but, as we -- as

13 you -- as the Court goes through them, I can address that.

14          THE COURT:  All right.  Well, I see no reason to

15 restrict him from a thousand feet of children congregating.

16          MR. GOEKE:  And, your Honor, I can tell the Court

17 that, in other cases, other judges in this District have

18 modified that to a smaller number and then left it to be

19 addressed at the time of supervision if it needs to be reduced

20 further.

21          THE COURT:  All right.  Thank you, very much.

22          MR. GOEKE:  250 feet and 500 feet are numbers that

23 were passed through.

24          THE COURT:  All right.  I will say 250 feet.  So you

25 shall not reside within 250 feet of places where children

*SENTENCING HEARING - JANUARY 4, 2017*

1   congregate; such as, playgrounds or schools.

2       I am going to put in completing a mental health evaluation

3   and following up with any treatment.  If I put that condition

4   in, then the court can pay for that treatment.  So that is one

5   thing that I want to do there.

6       I will include that you are prohibited from possessing or

7   manufacturing any sexually explicit material, including whether

8   it involves adults or children.  And you will need to submit

9   your person, residence, office, vehicles to a search.

10      I'm not going to include the sex offender evaluation unless

11  it's required.

12          MR. GOEKE:  The only reason I would request that, your

13  Honor, is I wonder if it may be -- may assist the defendant in

14  getting treatment if it suggests that treatment would be

15  appropriate.  So I -- I guess I look at that as potentially

16  assisting the defendant as opposed to an obstacle.

17          THE COURT:  You know, I'm going to leave that to his

18  mental health provider.

19      And I'm definitely not going to require a successful sex

20  offender treatment because sex offender treatment programs are

21  targeted towards much different types of people than Mr. Lingo,

22  and I think it could be problematic.

23      I'm not going to restrict contact with children.  There's

24  no basis for that unless the law is requiring that.

25          MR. GOEKE:  I think that's a matter that can be

22

*SENTENCING HEARING - JANUARY 4, 2017*

1  addressed when supervision commences.

2  THE COURT:  All right.  The same for access to the

3  Internet or the computer.  That can be adjusted accordingly.

4  Our goal will be to try to help you once you are through

5  your period of incarceration.  You know, I think you've had a

6  successful time with Mr. Shepard; and, you know, hopefully he

7  would be available to you when you come back.

8  Mr. Prince, I don't know if there's a special location or

9  placement that --

10  MR. PRINCE:  Your Honor, I'm not sure either.  I had

11  looked at this briefly.  It seems that BOP does, I believe, have

12  a couple places; but I -- indeed, I spoke with Mr. Campbell,

13  who, obviously, has long experience in these in our office.  And

14  he said that, generally, BOP will make a proper assignment.

15  THE COURT:  If there is any -- after you do more

16  research and whether or not Mr. Lingo's family is requesting a

17  closer location or something else --

18  MR. PRINCE:  I'd be happy to file a notice with the

19  Court post --

20  THE COURT:  All right.  Then I will write a letter to

21  Bureau of Prisons.  I don't have control over where you are

22  placed, but I can make a recommendation.

23  I cannot, in honesty, follow through on 3553 and say that

24  this is no greater than necessary.  This is greater than

25  necessary.  I would urge your family members, who I'm happy are

*SENTENCING HEARING - JANUARY 4, 2017*

1  here supporting you, to contact their members of Congress and

2  say that, perhaps, they see that there's a lot of harm that's in

3  mandatory minimum sentences that restricts a Court's ability to

4  be able to tailor an appropriate sentence for people instead of

5  just using broadcloth to say everybody has to fit into this kind

6  of situation.

7      I hope that you can take advantage of as many programs as

8  possible, and I certainly wish you the best of luck.

9      Counts 2 and 3 to be -- or 1 and 3 to be dismissed?

10      MR. GOEKE:  Yes, your Honor.  The Government moves to

11  dismiss Count 1 and Count 3.

12      And I also should advise the Court, just of my obligations

13  under the Victim and Witness Act, that there were some

14  identified victim series in this case.  The appropriate

15  notifications went out.  I checked just this morning on the way

16  up to court to confirm that no request for restitution had been

17  provided, and our office is unaware of any request that had been

18  made.

19      THE COURT:  All right.  And I did sign the order of --

20  the amended preliminary order of forfeiture, and I understand

21  that $8,000 has been paid.

22      To the extent you have reserved any right to appeal, you

23  have 14 days from the entry of this judgment to appeal.

24      I don't think you should take this as a huge failure.  I

25  don't think your family should take this as a huge failure.  I'm

24

*SENTENCING HEARING - JANUARY 4, 2017*

1  sorry this is happening to you.  I'm sorry that you have to go

2  through this, and I hope the best for all of you.

3       Court's in recess.

4            THE DEFENDANT:  Thank you.

5       (Court adjourned at 10:53 a.m.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

25

C E R T I F I C A T E

I, RONELLE F. CORBEY, do hereby certify:

That I am an Official Court Reporter for the United States District Court for the Eastern District of Washington in Spokane, Washington;

That the foregoing proceedings were taken on the date and at the time and place as shown on the first page hereto; and

That the foregoing proceedings are a full, true and accurate transcription of the requested proceedings, duly transcribed by me or under my direction.

I do further certify that I am not a relative of, employee of, or counsel for any of said parties, or otherwise interested in the event of said proceedings.

DATED this 12th day of January, 2017.

_____
RONELLE F. CORBEY, RPR, CSR, CRR
Official Court Reporter for the
U.S. District Court for the
Eastern District of Washington in
Spokane County, Washington